# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT MACHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 07cv1754 |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, a business entity; METLIFE | ) | |
| GROUP, INC.; a New York business | ) | |
| corporation; METROPOLITAN LIFE | ) | |
| INSURANCE COMPANY, INC., a New York | ) | |
| Mutual Company, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Presently before for the Court is the MOTION TO COMPEL DISCOVERY filed by Plaintiff (*Document No. 10*), and the RESPONSE IN OPPOSITION filed by Defendants (collectively "MetLife") (*Document No. 12*). For the reasons that follow, the Motion is denied.

Plaintiff has moved pursuant to Federal Rule of Civil Procedure 37(d) to compel the production of surveillance videotapes and/or surveillance reports which were previously identified by MetLife in its Responses to Plaintiff's First Interrogatories and Request for Production by Documents.

MetLife served the Plaintiff with a Notice of Deposition, and the parties agreed to conduct the deposition of Plaintiff on May 14, 2008. Plaintiff requested the production of the surveillance materials <u>prior</u> to the deposition of Plaintiff. MetLife denied Plaintiff's request.

MetLife does not challenge that the surveillance materials which contain images of the Plaintiff and reports which summarize the content of the surveillance are relevant to this lawsuit and discoverable pursuant to Federal Rule of Civil Procedure 26(b)(1) under certain

circumstances. However, MetLife disputes that Plaintiff is entitled to this material prior to his deposition. Rather, MetLife argues that the "surveillance materials are discoverable - because they are relevant - but only <u>after</u> the deposition of the plaintiff." In support of its refusal to produce the surveillance materials this time, MetLife relies upon *Snead v. American Export-Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (E.D. Pa. 1973), and the cases that follow it.

The court observes that there are no binding precedents which have addressed the discoverability of surveillance information. However, the weight of decisions which have addressed the issue favor discoverability of surveillance information, albeit often with limitations on the timing of the disclosures.

As Plaintiff acknowledges, the seminal decision on the issue is *Snead*, wherein a three-judge panel was confronted with the question of whether plaintiff could discover whether the defendant had conducted surveillance of the plaintiff. The *Snead* court found that the surveillance films were "highly relevant - -- perhaps they will establish the most important facts in the entire case," and further found that they were not protected by any privilege. *Id.* at 150. The court considered the "substantial need" prong of the test to overcome work product protection and explained as follows:

> The only time there will be substantial need to know about surveillance pictures will be in those instances where there would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray. By the same token this would be the only instance where there is a substantial need to withhold that information from plaintiff's counsel. If the discrepancy would be the result of the plaintiff's untruthfulness, the substantial need for his counsel to know of the variance can hardly justify making the information available to him. On the other hand, if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed. It goes without saying that the means to impeach should not be the exclusive

2

> property of the defense. Any rule to be formulated, therefore, must
> balance the conflicting interests of the Plaintiff against the conflicting
> interests of the defendant and protect both insofar as it is possible to do so.
> In addition, the objectives of the discovery rules must be kept in mind so
> that a just and speedy determination of cases can be obtained.

*Id.* at 151. The court chose to protect the impeachment value of the surveillance films by ordering that defendant be allowed to depose the plaintiff about the plaintiff's injuries, their effects, and the plaintiff's present disabilities before disclosure of the surveillance information. *Id*. The court ordered the disclosure to take place as close to the time of trial as possible, but before the final pretrial conference. *Id.*

After *Snead,* courts have followed the procedures suggested in *Snead* and have required disclosure of surveillance information and films, but only after the deposition of the plaintiff or other witnesses to be impeached, "so that their testimony may be frozen." *Daniels v. National Railroad Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986).

After deliberate consideration of the positions of the parties in this case, the Court finds that the surveillance material at issue must be disclosed, but only <u>after</u> the Plaintiff's deposition has been taken. This procedure will preserve the impeachment value of the surveillance material after MetLife has had the opportunity to obtain testimony under oath of Plaintiff's claimed disabilities, restrictions and limitations prior to MetLife disclosing the content of the surveillance materials. Should MetLife determine that it does not intend to introduce any surveillance evidence at trial, it need not produce the evidence during discovery.

So ORDERED this 10th day of June, 2008.

                                                        BY THE COURT:

                                                       s/Terrence F. McVerry
                                                       United States District Court Judge

cc:        Gary J. Ogg, Esquire
Ogg, Cordes, Murphy & Ignelzi
Email: gogg@ocmilaw.com

David K. Houck, Esquire
Ogg, Cordes, Murphy & Ignelzi
Email: dhouck@ocmilaw.com

Jason A. Archinaco, Esquire
White & Williams
Email: archinacoj@whiteandwilliams.com

Robert Wright, Esquire
White & Williams
Email: wrightr@whiteandwilliams.com